## HENRY L. MILLER v. JOHN STRABBING, SHERIFF OF ALLEGAN COUNTY.

*Execution against the person—Imprisonment—Bond for jail limits —Release under poor debtors' act.*

1. Chapter 309, How. Stat., which provides for the release of poor debtors from imprisonment, does not apply to a debtor who has given a bond for the jail limits.

2. The word "imprisoned," as used in chapter 309, How. Stat., which provides for the release of poor debtors from imprisonment, is used in the same restricted sense as elsewhere in the statutes, and the Legislature intended to extend the relief provided only to such persons as are in *actual confinement in jail.*

*Mandamus.* Argued June 7, 1892. Denied June 15, 1892.

Relator applied for *mandamus* to compel his release under the poor debtors' act. The facts are stated in the opinion.

*Philip Padgham* and *E. E. Smith,* for relator.

*C. R. Wilkes,* for respondent.

PER CURIAM.   In case for slander commenced by *capias*, judgment was rendered against relator, and afterwards a body execution was issued, whereupon he gave a bond for the jail limits, and was released from custody.   He now claims the benefit of chapter 309, How. Stat., for the release of poor debtors from imprisonment, and asks a *mandamus* to compel the sheriff to take steps for his discharge.

That chapter provides that "every person who shall be imprisoned by virtue of one or more executions in civil causes may make application for his discharge from imprisonment," after he shall have been imprisoned a given length of time, according to the amount of the debt.   The statute contemplates an imprisonment of 30 days for a debt not exceeding $25, of 60 days for $50, of 90 days for $100, of 6 months for $500, and of 9 months when the debt exceeds $500.   It provides that the application for a discharge is to be made in the first instance to the sheriff "in whose custody he shall be," and makes it the duty of the sheriff to report such application to a circuit court commissioner, circuit judge, or to the judge of any superior court from which the execution issued, "by virtue of which the person   *   *   *   is imprisoned or held by such sheriff."   It provides for the appointment of a time and place for the examination of such debtor, and for a notice of at least three days to be given to the plaintiff in execution or his attorney, if within the same or adjoining county, and, if neither plaintiff nor his attorney shall be found within either of such counties, then that "such notice shall be published by posting the same upon the outer door of the jail in which such person is imprisoned."   It further provides that "on the day appointed for such examination the sheriff or jailer shall have the prisoner at the place designated by such officer."   It next provides that, in

case the examining officer shall be satisfied of the truth of the facts set forth, he shall issue a certificate to the keeper of the jail, in which he sets forth that "A. B., a poor prisoner *confined upon execution in a civil cause in the jail of said county,*" has caused notice to be given to the plaintiff in execution of his desire to take the benefit of the law for the relief of poor debtors, and that, in the opinion of said officer, the applicant has no estate, real or personal, except such as is exempt from execution, and has not any estate now conveyed, concealed, or disposed of with design to secure the same to the use of himself or family or to defraud his creditors, and that such officer has, after due examination, administered the oath prescribed by law to be taken by poor prisoners "who are *committed* on execution in civil causes." It further provides that the sheriff, "upon receiving such certificate, shall discharge the prisoner so far as he is held in prison on the execution" therein mentioned. If the officer before whom such examination is had "shall not be satisfied that he is entitled to his discharge, such prisoner shall be *remanded to prison.*"

It is clear that this chapter was not intended to include persons who are in a situation [to apply directly to the circuit court commissioner or circuit judge, and who are not actually confined in or committed to jail. The requirements that notice shall be posted upon the *outer door of the jail in which such person is imprisoned;* that the sheriff is to *produce the prisoner* at the place designated for the examination; and that, in case the examining officer shall not be satisfied that the prisoner is entitled to his discharge, he shall be *remanded to prison,* —are inconsistent with the theory that the provisons of this statute are to be extended to persons who have given bail for the limits. Nowhere does any statute refer to such persons as confined in jail, or as being imprisoned.

The question is not whether such persons must be regarded as under restraint, but it is whether the provisions of this chapter apply to persons not in actual confinement, and whether the word "imprisoned," as here used, can be enlarged so as to include persons not in actual confinement in jail, but who have avoided such confinement by giving bail. Those sections of this chapter which provide the manner of or the machinery for the relief clearly indicate the class of persons to whom it was designed to afford the relief, viz., those who are confined in or committed to jail, in the actual custody of the sheriff, and capable of being produced by him. The special bail for any defendant may surrender him, or he may surrender himself in exoneration of his bail, at any time, and thus bring himself within the provisions of this statute. This chapter contemplates a term of imprisonment graded according to the extent of the wrong done before the prisoner can avail himself of the relief provided, and it cannot be said, in the absence of express provisions, that it was the intention of the Legislature to include both classes, and thus treat a confinement within the limits of a county as equivalent to a close jail confinement for the same period. That would be punishment for poverty, instead of redress for a wrong which may have been the same in both instances. It is quite evident that the word "imprisoned" in this chapter is used in the same restricted sense in which it is elsewhere used in the statutes, and that the Legislature intended to extend the relief provided only to such persons as are in actual confinement in jail.

The writ, therefore, must be denied.

MONTGOMERY, J., did not sit.